238 S.W.3d 828 (2007)
In the Interest of N.L.G., A Child.
No. 2-06-347-CV.
Court of Appeals of Texas, Fort Worth.
October 11, 2007.
*829 Joseph F. Zellmer, Denton, for Appellant.
Paul Johnson, John A. Stride, Andrea R. Simmons, Dan Hoffman, Denton, for Appellee.
PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

OPINION
PER CURIAM.

I. INTRODUCTION
The Texas Department of Family and Protective Services ("TDFPS") brought suit to terminate the parental rights of Sarah W. to her five-day-old daughter, N.L.G. Following a jury trial, the trial court signed a judgment terminating Sarah's parental rights.[1] In her sole point, Sarah argues that the trial court abused its discretion by allowing N.L.G.'s foster parents to intervene in the suit. We will affirm.

II. FACTUAL AND PROCEDURAL BACKGROUND
In April 2005, Sarah gave birth to N.L.G. After both mother and child tested positive for methamphetamine, the hospital contacted TDFPS. A TDFPS caseworker investigated Sarah's drug use, evaluated her interaction with N.L.G., and ultimately took the child into State custody when the child was two days old. TDFPS placed the child with foster parents Randall and Brenda N. five days later and instituted termination proceedings against Sarah.
The trial court initially set the termination trial for March 2006, but upon a request from Sarah for a continuance, reset it for August 14, 2006. On July 14, the foster parents filed a petition to intervene in the termination trial. Sarah moved to strike the petition to intervene on the ground that it was filed less than thirty days before trial, and she was therefore unable to conduct proper discovery on the intervenors' claims. After a hearing on the motion, the trial court allowed the foster parents to intervene, reset the trial for September 25, 2006, and ordered the intervenors to submit to Sarah's discovery requests.
At trial, the jury found that termination of Sarah's parental rights was in the best interest of N.L.G., and the trial court entered a termination order pursuant to this determination. Sarah now appeals.

III. STANDING OF THE FOSTER PARENTS
In her sole point, Sarah complains that the trial court erred by failing to strike the foster parents' plea in intervention because they lacked standing.[2] The standard of review for determining whether the trial court improperly denied a motion to strike intervention is abuse of discretion. Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex.1990); Law Offices of Windle Turley v. Ghiasinejad, 109 S.W.3d 68, 70 (Tex.App.-Fort Worth 2003, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any *830 guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
In 1995, the Texas Legislature passed new laws specifically implicating the ability of foster parents to be heard in trial court regarding their foster children. See Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125 (amended 1997) (current version at TEX. FAM.CODE ANN. § 102.003-.004 (Vernon Supp.2006)). Foster parents now have two avenues to the courthouse. First, foster parents can bring an original suit affecting the parent child relationship (SAPCR) if the child has lived with the foster parents "for at least [twelve] months ending not more than [ninety] days preceding the date of the filing of the petition." TEX. FAM.CODE ANN. § 102.003(a)(12) (Vernon Supp.2006).
Second, foster parents who have not had possession of the child for at least twelve months ninety days before they file suit may nevertheless intervene in a SAPCR brought by someone with standing if the foster parents can demonstrate that they have had substantial past contact with the child. Id. at § 102.004(b).
The substantial past contact test established by section 102.004(b) for foster parent intervenors was a dramatic change from the traditional intervenor standing requirement. For several years, the Texas Supreme Court case of Mendez v. Brewer dominated the jurisprudence of when foster parents could intervene in termination proceedings. 626 S.W.2d 498, 499 (Tex.1982). In Mendez, foster parents planning on adopting the child if parental rights were terminated sought to intervene in a termination suit. Id. at 500. The court looked to section 11.03 of the Texas Family Code, which, at that time, read: "A suit affecting the parent-child relationship may be brought by any person with an interest in the child." Id. at 500 (citing former Texas Family Code 11.03). Based on this statute, the court in Mendez established a "justiciable interest" standard for intervenors. Id. Applying this standard to the foster parents, the Mendez court held that their interest was wholly contingent on the outcome of the termination suitan interest that was too weak to be justiciable. Id.
Since Mendez, however, the Texas Legislature has passed section 102.004, which, as discussed above, creates the new, more relaxed substantial past contact test for establishing intervenor standing in a SAPCR. See TEX. FAM.CODE ANN. § 102.004; Rodarte v. Cox, 828 S.W.2d 65, 70 (Tex.App.-Tyler 1991, writ denied). Thus, a party who cannot file a SAPCR under the Mendez "justiciable interest" standard may nonetheless intervene in a suit filed by a qualified party under the statutory "substantial past contact" standard. In re A.M., 60 S.W.3d 166, 169 (Tex.App.-Houston [1st Dist.] 2001, no pet.).
Sound policy supports the relaxed standing requirements. In re K.T., 21 S.W.3d 925, 927 (Tex.App.-Beaumont 2000, no pet.). There is a significant difference between filing a suit which could disrupt the children's relationship with their parents, and intervening in a pending suit, where the relationship is already disrupted. Whitworth v. Whitworth, 222 S.W.3d 616, 621-22 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In the latter case, intervention may enhance the trial court's ability to adjudicate the cause in the best interest of the child. Id.
Other courts have evaluated cases in which foster parents sought to intervene in termination proceedings. See In re *831 H.B.N.S., Nos. 14-05-00410-CV, 14-06-00102-CV, 2007 WL 2034913, at *3-4 (Tex. App.-Houston [14th Dist.] July 17, 2007, no pet.); Chavez v. Chavez, 148 S.W.3d 449, 455-56 (Tex.App.-El Paso 2004, no pet.); In re A.M., 60 S.W.3d at 166. In one case, a seventeen-month-old child had lived with the foster parents for fourteen months of her life. In re A.M., 60 S.W.3d at 169. The foster parents had decided to adopt the child if the mother's parental rights were terminated. Id. The appellate court held that, under section 102.004, the trial court did not abuse its discretion in allowing the foster parents to intervene in the termination suit because the foster parents had had substantial past contact with the child. Id.
The foster parents in this case had two avenues to be heard by the court  either as petitioners or intervenors. N.L.G. came to the foster parents in April 2005 and continuously remained with them through the termination hearing in September 2006. Therefore, under section 102.003(a)(12), the foster parents could have brought an original suit affecting the parent-child relationship concerning N.L.G. See TEX. FAM.CODE ANN. § 102.003(a)(12).
The foster parents in this case, however, chose the second method available to them as intervenors in the suit brought by the State. As intervenors, the foster parents had to provide the trial court with grounds for a finding of substantial past contact with N.L.G. At the time of the hearing on Sarah's motion to strike, the child had lived with the foster parents for her entire life, excluding the first seven days following her birth. Furthermore, the foster parents had become emotionally attached to the child and had decided to adopt her if Sarah's parental rights were terminated. The intervenors made the trial court aware of these facts through their motion to intervene and the hearing on that motion.[3] Under these circumstances, we cannot say that the trial court abused its discretion by deciding that the foster parents had had substantial past contact with the child.
On appeal, Sarah heavily relies on the Mendez case for its precedential value. As demonstrated, however, such reliance is misplaced because the Texas Legislature has repealed and replaced the statute relied on in Mendez with a statute specifically addressing the standing requirements for intervenors in a suit affecting the parent-child relationship. See TEX. FAM.CODE ANN. § 102.004(b); Rodarte, 828 S.W.2d at 70. Applying these new statutory guidelines, which relax the standing requirements for intervenors, the trial court in this case did not act unreasonably, and thus did not abuse its discretion, when it allowed the foster parents to intervene. Therefore, we overrule Sarah's point.

IV. CONCLUSION
Having overruled Sarah's sole point, we affirm the trial court's judgment.
NOTES
[1] The trial court's judgment also terminated N.L.G.'s father's parental rights, but N.L.G.'s father does not appeal that decision.
[2] The State argues that Sarah failed to preserve error because her argument at trial does not comport with her argument on appeal. Although Sarah never specifically challenged the foster parents' standing at trial, the general rule is that standing cannot be waived. Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex.1996). Consequently we reach the merits of Sarah's complaint.
[3] In their motion to intervene, the foster parents cite Family Code section 102.003(a)(12), which, as discussed above, provides standing to a foster parent who possesses the child for twelve months ending not more than ninety days before the foster parents file a petition. TEX. FAM.CODE ANN. § 102.003(a)(12). Furthermore, at the hearing on Sarah's motion to strike, the foster parents' attorney informed the trial court that the foster parents were seeking to adopt the child.